OPINION
{¶ 1} Defendant-appellant, University of Cincinnati ("the University"), appeals from a judgment of the Ohio Court of Claims finding that Drs. Roy Jacobson and Jeffery Heck are not entitled to civil immunity pursuant to R.C. 9.86 for medical malpractice claims brought by plaintiff-appellee, Judith Johnson. The University assigns a single error:
The Court of Claims erred in holding that Roy Jacobson, M.D. and Jeffery Heck, M.D. are not entitled to personal immunity under R.C. 9.86. Because the Court of Claims did not err in finding that Drs. Jacobson and Heck were acting outside the scope of their employment with the University when they provided medical services to plaintiff, we affirm the court's decision that they are not entitled to immunity under R.C.9.86.
 {¶ 2} At the times pertinent to this action, the University employed Drs. Jacobson and Heck as assistant professor and professor, respectively, on the faculty of the Department of Family Medicine, within the University's College of Medicine. Their responsibilities as faculty members included teaching, research, and administration, together with precepting, supervising and advising medical students and residents. The Department of Family Medicine also required, as part of its "Practice Plan," that faculty members maintain a clinical practice in order to provide a continuing patient base for training medical students and residents.
 {¶ 3} In accordance with the department's clinical practice requirement, Drs. Jacobson and Heck participated in a clinical practice at Wyoming Family Practice Center, a facility that faculty member physicians staffed. At the facility, the physicians provided professional clinical services to patients and supervised medical students and residents who rotated through the family practice center. The University owned the family practice center's building and land, and a large sign in front of the building identified the facility as the "University of Cincinnati, Wyoming Family Practice Center." The identifying name also was printed on business cards and appointment cards for the family practice members. The professional practice itself, however, was a separate legal entity from the University, and University Family Physicians, Inc. ("UFPI"), a non-profit professional practice corporation, administered and operated the practice.
 {¶ 4} Plaintiff sought medical treatment at the Wyoming Family Practice Center beginning in approximately 1994 and saw various doctors there. The medical care at issue occurred in October and November 2002, when Drs. Jacobson and Heck attended plaintiff at the facility. Plaintiff first saw Dr. Jacobson, complaining of shortness of breath and difficulty breathing; Dr. Jacobson took a chest x-ray, which was reported as normal, and prescribed cough medicine for plaintiff. On November 11, 2002, plaintiff again saw Dr. Jacobson, this time complaining she was coughing up blood and was experiencing severe left leg pain from her lower back down to her toes. Dr. Jacobson did not examine plaintiff's leg, which was cold to the touch and had two discolored toes. Dr. Jacobson diagnosed plaintiff as having sciatica.
 {¶ 5} Failing to improve, plaintiff returned to the Wyoming Family Practice Center on November 15, 2002, this time seeing Dr. Heck. Dr. Heck found that plaintiff's left leg was markedly cold and had no pulse, and her toes were somewhat bluish. From plaintiff's continued cough, Dr. Heck diagnosed plaintiff as having an upper respiratory infection and bronchitis for which he prescribed an antibiotic; he further ordered a Doppler study and MRI and advised plaintiff to see Dr. Jacobson in one week for follow-up.
 {¶ 6} After having an MRI the next day, plaintiff went to the emergency room at Mercy/Mt. Airy Hospital, where she was admitted to the intensive care unit complaining of excruciating leg pain. On November 22, 2002, physicians of the hospital amputated plaintiff's left leg above her knee due to ischemic injury from blood clots.
 {¶ 7} Plaintiff filed a complaint in the Hamilton County Court of Common Pleas alleging that Drs. Jacobson and Heck provided substandard medical care and treatment in failing to diagnose and treat plaintiff's ischemia and blood clots. In defense, Drs. Jacobson and Heck asserted that as employees of the University, they were employees of the "state" and therefore were entitled to civil immunity pursuant to R.C. 9.86. The common pleas court stayed plaintiff's civil action pending the Court of Claims' determining, pursuant to R.C. 2743.02(F), whether Drs. Jacobson and Heck are entitled to civil immunity under R.C. 9.86.
 {¶ 8} The only defendant named in the Court of Claims was the University, which was alleged to be negligent through Drs. Jacobson and Heck. Following consideration of the parties' briefs and stipulated evidentiary materials, the Court of Claims issued a decision finding that when Drs. Jacobson and Heck provided the subject medical care to plaintiff, they were acting as private physicians and were not acting in the course and scope of their employment with the University. Accordingly, the court concluded the physicians are not entitled to immunity pursuant to R.C. 9.86.
 {¶ 9} On appeal, the University asserts the Court of Claims erred in ruling that Drs. Jacobson and Heck are not entitled to civil immunity under R.C. 9.86. The University contends (1) plaintiff was not the private patient of Drs. Jacobson and Heck, but instead was the patient of the University's family practice facility, and (2) both physicians treated plaintiff within the course and scope of their faculty appointments.
 {¶ 10} R.C. 9.86 states that "no officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Whether Drs. Jacobson and Heck are entitled to civil immunity under R.C. 9.86 is a question of law. Nease v. MedicalCollege Hosp. (1992), 64 Ohio St.3d 396, 400, citing Conley v. Shearer
(1992), 64 Ohio St.3d 284.
 {¶ 11} Plaintiff does not claim that Drs. Jacobson and Heck acted with malicious purpose, in bad faith, or in a wanton or reckless manner in their treatment of her. Rather, plaintiff asserts that the physicians were acting outside the scope of their employment with the University when they rendered the medical services at issue.
 {¶ 12} Whether Drs. Jacobson and Heck acted manifestly outside the scope of their employment with the University is a question of fact.Barkan v. The Ohio State Univ., Franklin App. No. 02AP-436, 2003-Ohio-985, ¶ 11; Smith v. Univ. of Cincinnati, (Nov. 29, 2001), Franklin App. No. 01AP-404; Lynd v. Univ. of Cincinnati (Nov. 23, 1999), Franklin App. No. 99AP-37. Accordingly, we review the facts to determine whether Drs. Jacobson and Heck were acting within the scope of their employment with the University when they provided medical treatment to plaintiff in October and November 2002. Wayman v. Univ. of Cincinnati Med. Ctr. (June 22, 2000), Franklin App. No. 99AP-1055.
 {¶ 13} The case law from this court establishes no bright-line rule for determining whether a physician employed by both a state university and a professional practice group has acted within the scope of the physician's university, or "state," employment. While this court has utilized a variety of factors in making the determination, it has concluded that the primary factor is the "education factor": whether a medical student or resident was involved in the patient's care or treatment when the physician saw the patient, thus implicating the doctor's capacity as a faculty member supervising residents or teaching medical students. Theobald v. Univ. of Cincinnati, Franklin App. No. 02AP-560, 2005-Ohio-1510; Barkan, supra, at ¶ 12; Ferguson v. The OhioState Univ. Med. Ctr. (June 22, 1999), Franklin App. No. 98AP-863. While the "education" factor is primary in determining the scope of employment issue, we cannot say the University's financial gain as compared to the physician's gain, the "financial" factor, will never be a proper consideration, depending on the circumstances. Wayman, supra.
 {¶ 14} Here, Drs. Jacobson and Heck saw plaintiff as a patient only at the Wyoming Family Practice Center, not at any other facility. Dr. Jacobson testified he had a physician-patient relationship with plaintiff since 1998 or 1999. Dr. Heck testified that the patient care he provided to plaintiff was not in any way involved with his teaching capacity. Although Drs. Jacobson and Heck supervised medical students and residents at other times at the Wyoming Family Practice Center and at other locations, no residents were in any training rotations at the practice center when the physicians attended to plaintiff in October and November 2002. The record further indicates that no medical students or residents were ever in attendance with Drs. Jacobson and Heck when they provided medical care to plaintiff, and it does not reflect that medical students or residents were otherwise involved in patient care services for plaintiff.
 {¶ 15} If we look only to whether the physicians here were treating plaintiff in a teaching capacity, the facts unequivocally reflect that all services Drs. Jacobson and Heck rendered were in the absence of medical students or residents. Accordingly, without a student or resident involved in the patient's care or treatment, the "education factor" results in a determination that the services were rendered outside the scope of the physician's employment with the University. Theobald,
supra. Indeed, the professional practice corporation alone paid Drs. Jacobson and Heck for the clinical services, and the University expressly informed them that they "are not paid by the University of Cincinnati to provide patient care services." (Employment letters to Drs. Jacobson and Heck.)
 {¶ 16} While the noted language in the University's contract arguably implicates the "financial" factor referenced in Theobald, the intended effect of the language is consistent with this court's prior decisions. In this case, as in York v. Univ. of Cincinnati Med. Ctr. (Apr. 23, 1996), Franklin App. No. 95API09-1117, Balson v. Ohio State Univ.
(1996), 112 Ohio App.3d 33, Harrison v. Univ. of Cincinnati Hosp. (June 28, 1996), Franklin App. No. 96API01-81, and Wayman, the defendant physician was a faculty member of a university medical school and a member of a professional practice plan. Like the practice plans in York,Balson, and Wayman, the professional practice corporation in this case billed for the medical services rendered to the plaintiff, received the compensation for those services, and paid the physicians' malpractice insurance premiums. Like the physicians in Harrison and Wayman, Drs. Jacobson and Heck received a salary both from the University and the practice group and had separate employment contracts with the professional practice group, which provided W-2's and employee and retirement benefits separate from those the University provided. Here, as in York, the University received nothing for the medical services rendered to the plaintiff, which we concluded in York evidences the lack of an employment relationship with respect to the medical services. The result was no different in Harrison and Wayman, where the practice plans contributed some funds to the university with which they were associated.
 {¶ 17} Given the results in applying the "education factor," as well as the factual similarities of this case with those in the foregoing cases, the Court of Claims did not err in finding that Drs. Jacobson and Heck were acting outside the scope of their employment with the University when they treated plaintiff at the Wyoming Family Practice Center. Accordingly, the University's single assignment of error is overruled, and the judgment of the Court of Claims is affirmed.
Judgment affirmed.
Klatt and Bowman, JJ., concur.
Bowman, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. {PRIVATE}