[Cite as *Harvey v. Univ. of Cincinnati*, 2009-Ohio-7029.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ROBERT HARVEY, Co-Admr., etc.,
et al.

      Plaintiffs

      v.

UNIVERSITY OF CINCINNATI

      Defendant
      Case No. 2009-03517

Judge Alan C. Travis

<u>DECISION</u>

{¶ 1} On August 5, 2009, the court conducted an evidentiary hearing to determine whether William Naber, M.D. is entitled to civil immunity pursuant to R.C.2743.02(F) and 9.86. The parties also filed post-hearing briefs and replies. Upon review of the testimony and evidence presented at the hearing, as well as the memoranda filed by the parties, the court makes the following determination.

{¶ 2} R.C. 2743.02(F) states, in part:

{¶ 3} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised

Code and whether the courts of common pleas have jurisdiction over the civil action."

**{¶ 4}** R.C. 9.86 states, in part:

**{¶ 5}** "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

**{¶ 6}** The Supreme Court of Ohio has held that "in an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02[F], the Court of Claims must initially determine whether the practitioner is a state employee. If there is no express contract of employment, the court may require other evidence to substantiate an employment relationship, such as financial and corporate documents, W-2 forms, invoices, and other billing practices. If the court determines that the practitioner is not a state employee, the analysis is completed and R.C. 9.86 does not apply.

**{¶ 7}** "If the court determines that the practitioner is a state employee, the court must next determine whether the practitioner was acting on behalf of the state when the patient was alleged to have been injured. If not, then the practitioner was acting 'manifestly outside the scope of employment' for purposes of R.C. 9.86. If there is evidence that the practitioner's duties include the education of students and residents, the court must determine whether the *practitioner was in fact educating a student or resident when the alleged negligence occurred.*" *Theobald v. University of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶30-31. (Emphasis added.)

**{¶ 8}** At all times relevant, Dr. Naber was employed as an Assistant Professor of Clinical Emergency Medicine in the College of Medicine at the University of Cincinnati (UC). He also provided clinical care to patients at the Christ Hospital through his private practice group, University Emergency Physicians, Inc. dba Vanguard Medical (Vanguard). Dr. Naber stated that he received income both from UC and Vanguard, with the largest portion coming from the clinical practice. He also stated that he taught at UC approximately one to three hours per year, usually in the form of a lecture during orientation for new physicians.

{¶ 9}   Plaintiffs' decedent, Brandi Harvey, was brought to the emergency room of Christ Hospital on April 12, 2007, at approximately noon where she was interviewed by a triage nurse.   Brandi complained that she was "stressed out" but she refused to elaborate or to explain why she felt that way.   The triage nurse noted "unsure if SI [suicidal ideation] or HI [homicidal ideation].  (Plaintiffs' Exhibit 1.)  Dr. Naber stated that he spoke with Brandi and her parents and he attempted to elicit some information from Brandi.  After much coaxing, Brandi alluded to relationship problems and her fear that she may have contracted an infectious disease.  Sometime prior to 2:00 p.m., Dr. Naber received a telephone call and stepped away from Brandi and her parents.  The nursing notes document that at 2:00 p.m., Brandi was "seen running out of room [with] mother chasing out into waiting room."  (Plaintiffs' Exhibit 1.)

{¶ 10} Eventually, Brandi was located at the base of the outer wall of the parking garage where she landed after she allegedly leapt or fell over a wall on an upper floor of the garage.  Brandi was barely alive and she was transported back to the emergency room suffering from devastating head injuries.  Brandi succumbed to those injuries a short while later.

{¶ 11} Plaintiffs allege that Dr. Naber was negligent in his failure to properly triage, diagnose, treat, medicate, restrain, and protect Brandi prior to her flight from the hospital.  According to plaintiffs, the alleged negligence occurred between noon and just prior to 2:00 p.m.

{¶ 12} Initially, the court finds that Dr. Naber's position as an assistant professor at UC clearly qualifies as state employment.[1]   Thus, the issue before the court is whether Dr. Naber was acting on behalf of the state at the time when the alleged negligence occurred and because the evidence establishes that Dr. Naber's duties included the education of residents, whether he was in fact educating a resident at the time of the alleged negligence.

{¶ 13} In the present case, there is no documentary evidence of a resident being present in the emergency room of Christ Hospital prior to 2:00 p.m.  According to the emergency department rotation schedule, Dr. Laura Heitsch was the only resident scheduled to work April 12, 2007, from 2:00 p.m. through 12:00 a.m.   Dr. Naber

explained that it was normal procedure for a resident to arrive some time prior to the start of the shift but that in this instance he did not recall seeing Dr. Heitsch prior to the time when he was attempting to resuscitate Brandi at the parking garage. He specifically recalled that Dr. Heitsch was present when Brandi was transported back to the emergency department. In addition, Dr. Naber maintains that the resident participated fully in the resuscitation efforts and that he subsequently used the circumstances of the entire incident when he taught and trained other residents.

{¶ 14} Plaintiffs contend that they are not alleging any claims of negligence against Dr. Naber with regard to the care and treatment of Brandi after she was located at the base of the parking garage.

{¶ 15} Upon review of the testimony, evidence, and arguments of counsel, the court is not persuaded that a resident was present for the purpose of education during the period of time that the alleged negligence occurred. The court further finds that Dr. Naber was not furthering the interests of the state during the time that he interviewed Brandi and managed her care prior to her fleeing the premises. Dr. Naber admitted that Dr. Heitsch did not assist him in interviewing or assessing Brandi prior to her escape. In addition, Dr. Naber testified that he did not specifically recall when Dr. Heitsch was first present, except that he recalled seeing her upon his return to the emergency room with Brandi on the gurney.

{¶ 16} Defendant presented no documentation specifying when Dr. Heitsch arrived at the emergency room or whether she was present in the emergency room prior to Brandi's flight from the hospital. As stated in *Theobold*, supra, "'[i]n many instances, the line between [the physician's] roles (practicing and teaching) is blurred because the practitioner may be teaching by simply providing the student or resident an opportunity to observe while the practitioner treats a patient.'" Id. at ¶16 quoting *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶34. In affirming the holding of the Tenth District Court of Appeals, the Supreme Court agreed that "the question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury." Id. at ¶23. Dr. Naber's duties as a state-employed professor of medicine

---

[1]Plaintiffs have not asserted that Dr. Naber's conduct was wanton and reckless and, therefore,

required him to train and educate residents who rotated through the emergency room of Christ Hospital. The Court of Appeals had explained that "anytime a clinical faculty member furthers a student or resident's education, he promotes the state's interest. Because the state's interest is promoted no matter how the education of the student or resident occurs, a practitioner is acting within the scope of his employment if he educates a student or resident by direct instruction, demonstration, supervision, or simple involvement of the student or resident in the patient's care." *Theobald*, supra, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶47.

{¶ 17} Based upon the totality of the evidence presented, the court concludes that none of those methods of instruction occurred during the time period from noon until Brandi had fled and Dr. Naber was summoned from the cubicle. Certainly, education of students and residents may be accomplished by either direct instruction or simple observation of medical procedures. Here, neither of those occurred between Dr. Naber and Dr. Heitsch prior to Brandi's flight. This court has previously determined that the holding in *Theobald* does not restrict physician immunity to situations where a resident or student was physically present or assisting in the care of a patient. See *Clevenger v. Univ. of Cincinnati Coll. of Med.*, Ct. of Cl. No. 2008-10323, 2009-Ohio-2829. Nonetheless, the court finds that the resident must be available to receive such instruction.[2] As noted by plaintiffs in their brief, the emphasis is placed upon the temporal nexus between the alleged negligent acts and the instruction of students or residents for the purpose of medical training. As such, the court finds that Dr. Naber was not educating Dr. Heitsch at the time of the alleged negligence. Therefore, the court concludes that Dr. Naber was not acting within the scope of his state employment with UC at the time that the alleged negligence occurred.

{¶ 18} Consequently, the court concludes that Dr. Naber is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F). Therefore, the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

outside the scope of his state employment.

[2] In *Theobald*, the Supreme Court referenced the holding of *Johnson v. Univ. of Cincinnati*, Franklin App. No. 04AP-926, 2005-Ohio-2203, wherein the physicians were found to be outside the scope of their state employment, inasmuch as they were not supervising residents or students at the time the alleged negligence occurred.

# Court of Claims of Ohio

ROBERT HARVEY, Co-Admr., etc.,
et al.

       Plaintiffs

       v.

UNIVERSITY OF CINCINNATI

       Defendant
       Case No. 2009-03517

Judge Alan C. Travis

JUDGMENT ENTRY

       The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F).  Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that William Naber, M.D. is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.


_____
ALAN C. TRAVIS
Judge

cc:

Brian M. Kneafsey Jr.  Bruce B. Whitman
Assistant Attorney General  3536 Edwards Road, Suite 100
150 East Gay Street, 18th Floor  Cincinnati, Ohio 45208
Columbus, Ohio 43215-3130

SJM/cmd
Filed November 24, 2009
To S.C. reporter December 29, 2009