[Cite as *Porter v. Univ. of Cincinnati*, 2010-Ohio-5909.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MONICA PORTER, Guardian, etc.,
et al.

    Plaintiffs

    v.

UNIVERSITY OF CINCINNATI

    Defendant
    Case No. 2009-05714

Judge Joseph T. Clark

DECISION

{¶ 1}  This case was sua sponte assigned to Judge Joseph T. Clark to conduct all proceedings necessary for decision in this matter.

{¶ 2}  On October 21, 2010, the court conducted an evidentiary hearing to determine  whether Shahab Akhter, M.D. and Lynne Wagoner, M.D. are entitled to civil immunity pursuant to R.C.2743.02(F) and 9.86.  The parties presented oral arguments and submitted deposition testimony and other exhibits for the court's consideration. Upon review of the evidence presented at the hearing, as well as the oral arguments of counsel, the court makes the following determination.

{¶ 3}  R.C. 2743.02(F) states, in part:

{¶ 4}  "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court

of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 5}   R.C. 9.86 states, in part:

{¶ 6}   "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 7}   At all times relevant, Dr. Akhter was employed as an Assistant Professor in the Department of Surgery, and Dr. Wagoner was employed as an Associate Professor in the Department of Medicine at the University of Cincinnati (UC).   In addition, Dr. Akhter was employed by a private practice group, University of Cincinnati Surgeons (UCS), and Dr. Wagoner received compensation from the medical private practice group, University Internal Medical Associates (UIMA).

{¶ 8}   It is undisputed that plaintiff's mother, Patricia Moore, underwent a heart transplant at UC in March 2007.   Dr. Wagoner testified that in April 2007, Moore received care from two separate teams, the surgical team headed by Dr. Akhter, and the medical team directed by Dr. Wagoner.   Dr. Wagoner was responsible for the treatment of any cardiac problems, organ rejection symptoms, and for the management of Moore's immunosuppression therapy, while Dr. Akhter would take care of any surgical complications or perform any necessary invasive procedures.

{¶ 9}   Moore's recovery continued uneventfully until the early morning of April 2, 2007, when she complained of shortness of breath and exhibited a rapid heart rate. Moore continued to complain of shortness of breath throughout the day.   She ultimately experienced complete respiratory arrest while being transported to the intensive care unit.   During resuscitation efforts, Moore suffered permanent brain injury due to lack of

oxygen.

{¶ 10} Dr. Akhter testified that on April 2, 2007, he examined Moore between 7:30 and 8:00 a.m., that he was not teaching a resident or intern at such time, and that he did not listen to her lungs during his examination. Dr. Akhter stated that he attributed her complaints of shortness of breath to her elevated heart rate which was being treated with medications. Dr. Akhter testified that he then was either in his office or in his research laboratory until he left the hospital at noon.[1] Dr. Akhter further testified that he received a telephone call from Dr. Wagoner at approximately 12:30 p.m., that she expressed some concern about Moore's breathing, and that together they decided that Dr. Akhter would arrange for Moore to undergo a chest x-ray. Dr. Akhter recalled that he spoke with the nurse practitioner employed by UC and directed her to order the test. Dr. Akhter acknowledged that the cardiac surgery team retained primary responsibility for Moore's care that day. According to Dr. Akhter, he did not receive any further calls in reference to Moore's condition until approximately 3:30 p.m. when Dr. Allen, a senior resident, notified him that Moore was being transferred to the intensive care unit.

{¶ 11} Dr. Wagoner testified that she examined Moore at approximately 12:00 noon after discussing with a fellow, Dr. Srivastava, about his assessment of Moore's condition. According to Dr. Wagoner, the fellow reported that Moore was anxious, that she continued to exhibit an elevated heart rate, and that she had not slept well during the night. Dr. Wagoner recalled that Dr. Srivastava did not accompany her when she visited Moore, that he left to commence his clinic duties, and that she followed up by calling Dr. Srivastava after she had examined Moore. Dr. Wagoner stated that, at the time, she was concerned that the elevated heart rate could have resulted from organ rejection or that there was fluid accumulating around the heart.[2] According to Dr.

---

[1]It is undisputed that Dr. Akhter left UC to attend a Cincinnati Reds baseball game that afternoon.

[2]Dr. Wagoner related that Dr. Srivastava had ordered an echocardiogram be performed on Moore to rule out the presence of fluid build-up, and that the test was completed at approximately 2:30 p.m. However, Dr. Wagoner maintained that she was not notified of the results of the echocardiogram prior to

Wagoner, she conveyed to Dr. Srivastava that she believed his assessment was in error and that Moore's symptoms were more likely caused by a respiratory condition rather than merely anxiety, in that Moore's breath sounds on the right side were quite diminished.    Indeed, Dr. Wagoner testified that she was concerned that Moore may have had accumulated air or fluid in and around the right lung which in turn was causing the elevated heart rate as well as the breathing difficulties.  Dr. Wagoner noted that those conditions, if present, would require some type of intervention by Dr. Akhter and his team; specifically, insertion of a chest tube to drain the fluid or air.  Thus, Dr. Wagoner asserts that, while the fellow was not present when she examined Moore, the examination was preceded by her discussion with the fellow and that she engaged in follow-up with the fellow and Dr. Akhter such that she was engaged in teaching while providing for Moore's care.

{¶ 12} Dr. Wagoner testified that she related her concerns to Dr. Akhter via telephone, that she did not realize at the time that he was away from UC, and that she had expected him to examine Moore and discover the basis for her respiratory distress. Dr. Wagoner consistently testified that when her conversation with Dr. Akhter concluded, she felt confident that Dr. Akhter would act upon her concerns in a timely fashion.

{¶ 13} Plaintiffs allege that both doctors were negligent for failing to properly observe and treat impending respiratory arrest and that their treatment of Moore fell below the standard of care for cardiac surgeons and cardiologists.  In addition, counsel for plaintiffs argued at the evidentiary hearing that Dr. Akhter's conduct in remaining at the baseball game and delegating Moore's care to the nurse practitioner was in bad faith and, therefore, outside the scope of his state employment.

{¶ 14} The Supreme Court of Ohio has held that "in an action to determine whether a physician or other health-care practitioner is entitled to personal immunity

---

Moore's respiratory arrest.

from liability pursuant to R.C. 9.86 and 2743.02[F], the Court of Claims must initially determine whether the practitioner is a state employee. If there is no express contract of employment, the court may require other evidence to substantiate an employment relationship, such as financial and corporate documents, W-2 forms, invoices, and other billing practices. If the court determines that the practitioner is not a state employee, the analysis is completed and R.C. 9.86 does not apply.

{¶ 15} "If the court determines that the practitioner is a state employee, the court must next determine whether the practitioner was acting on behalf of the state when the patient was alleged to have been injured. If not, then the practitioner was acting 'manifestly outside the scope of employment' for purposes of R.C. 9.86. If there is evidence that the practitioner's duties include the education of students and residents, the court must determine whether the *practitioner was in fact educating a student or resident when the alleged negligence occurred.*" *Theobald v. University of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶30-31. (Emphasis added.)

{¶ 16} According to plaintiffs' counsel, both doctors have asserted the defense of civil immunity. The court finds that inasmuch as both Drs. Akhter and Wagoner held faculty positions at UC, both were employed by the state. Thus, the issue before the court is whether Drs. Akhter and Wagoner were furthering the interests of the state when the alleged negligence occurred, and because the evidence establishes that their duties with UC included the education of students and residents, whether they were in fact educating a resident or student during the time of the alleged negligence.

{¶ 17} As stated in *Theobold*, supra, "'[i]n many instances, the line between [the physician's] roles (practicing and teaching) is blurred because the practitioner may be teaching by simply providing the student or resident an opportunity to observe while the practitioner treats a patient.'" Id. at ¶16 quoting *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶34. The Court of Appeals had explained that "anytime a clinical faculty member furthers a student or resident's education, he

promotes the state's interest. Because the state's interest is promoted no matter how the education of the student or resident occurs, a practitioner is acting within the scope of his employment if he educates a student or resident by direct instruction, demonstration, supervision, or simple involvement of the student or resident in the patient's care." *Theobald*, supra, at ¶47.

{¶ 18} Based upon the totality of the evidence presented, the court concludes that none of those methods of instruction occurred during the time period from 7:30 a.m. through approximately 3:30 p.m with respect to Dr. Akhter.[3] As such, the court finds that Dr. Akhter was not educating students or residents at the time of the alleged negligence. There is no evidence of a student or resident being present in the hospital room when Dr. Akhter evaluated Moore. Moreover, Dr. Akhter's communication to his nurse practitioner occurred in the context of his employment with UCS, and he was not engaged in teaching residents or students while he was at the baseball game as well.

{¶ 19} "The determination as to whether or not a person is entitled to immunity under R.C. 9.86 and 2743.02(F) is a question of law. *Barkan v. Ohio State Univ.*, 10th Dist. No. 02AP-436, 2003-Ohio-985, ¶11. However, the question of whether a person acted manifestly outside the scope of his or her employment is a question of fact. Id." *Schultz v. Univ. of Cincinnati College of Med.*, Franklin App. No. 09AP-900, 2010-Ohio-2071,¶13. Upon review, the court finds that plaintiffs simply failed to present sufficient evidence and testimony for the court to determine that Dr. Akhter's conduct was wanton, reckless, or in bad faith.

{¶ 20} Having found that Dr. Akhter was not furthering the interests of the state during the time that he was responsible for the care and treatment of Moore on April 2, 2007, prior to her respiratory arrest, the court concludes that Dr. Akhter was not acting within the scope of his state employment with UC at the time that the alleged negligence occurred. Consequently, the court finds that Dr. Akhter is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F). Therefore, the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

---

[3]In *Theobald*, the Supreme Court referenced the holding of *Johnson v. Univ. of Cincinnati*, Franklin App. No. 04AP-926, 2005-Ohio-2203, wherein the physicians were found to be outside the scope of their state employment, inasmuch as they were not supervising residents or students at the time the alleged negligence occurred.

{¶ 21} As a state-employed professor of medicine, Dr. Wagoner is required to train and educate residents who rotate through the cardiac service at UC. This court has previously determined that the holding in *Theobald* does not restrict physician immunity to situations where a resident or student was physically present or assisting in the care of a patient. See *Clevenger v. Univ. of Cincinnati Coll. of Med.*, Ct. of Cl. No. 2008-10323, 2009-Ohio-2829, affirmed Franklin App. No. 09AP-585, 2010-Ohio-88. Nonetheless, the court finds that there must be some evidence documenting that the teaching experience occurred. "[T]he emphasis is placed upon the temporal nexus between the alleged negligent acts and the instruction of students or residents for the purpose of medical training." *Harvey v. Univ. of Cincinnati*, Ct. of Cl. No. 2009-03517, 2009-Ohio-7029, ¶17. Dr. Wagoner testified that based upon his progress note, Srivastava probably performed his assessment of Moore at or around 11:30 a.m., that he then conveyed to Dr. Wagoner his opinion that Moore was most likely experiencing anxiety, that Dr. Wagoner offered differential diagnoses which included possible fluid build-up, and that Dr. Srivastava communicated that he had already ordered the echocardiogram. Dr. Wagoner further testified that she called Dr. Srivastava after she had examined Moore to explain to him why his assessment was incorrect and to convey that Dr. Wagoner intended to call Dr. Akhter as part of the plan of care. Plaintiffs did not present any evidence to rebut Dr. Wagoner's testimony that she was engaged in teaching with Dr. Srivastava before she entered Moore's room and that she followed up with a phone call to him after she had examined Moore. The court finds that Dr. Wagoner's testimony was credible and that Dr. Wagoner was engaged in teaching with Dr. Srivastava at all times that she provided care and treatment to Moore on April 2, 2007.

{¶ 22} Accordingly, the court concludes that Dr. Wagoner is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F). Therefore, the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

# Court of Claims of Ohio
The Ohio Judicial Center

MONICA PORTER, Guardian, etc.,
et al.

      Plaintiffs

      v.

UNIVERSITY OF CINCINNATI

      Defendant
      Case No. 2009-05714

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

      The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F). Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Shahab Akhter, M.D., is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case. Conversely, and for the reasons set forth in the decision filed concurrently herewith, the court finds that Lynne Wagoner, M.D., is entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

                                    _____
                                    JOSEPH T. CLARK
                                    Judge

cc:

Brian M. Kneafsey Jr.
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

James M. Kelley III
Stephen S. Crandall
6105 Parkland Blvd.
Mayfield Heights, Ohio 44124

SJM/cmd/Filed November 10, 2010/To S.C. reporter December 1, 2010