O’Neill, J.,
dissenting.
{¶ 32} This case represents a very dangerous precedent, and I must, therefore, respectfully dissent. The majority has needlessly expanded on this court’s holding in Theobald v. Univ. of Cincinnati, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, and in the sweep of a pen has extended governmental tort immunity to private corporations that use state facilities for profit. In Theobald, this court held that a doctor working for a university is immune from personal liability if he is, in fact, educating a student or resident when the negligence occurs. Id. at ¶ 31. That is an educational relationship that makes sense, and one that has withstood the test of time. The taxpayers of Ohio are well served, and the doctors who educate our future physicians are well served, when there is an acknowledgement that they are doing the state’s business when they are teaching student doctors in a state-university setting.
{¶ 33} But the majority abandons that rule and adopts a standard that allows the university to decide and declare by contract that all of a physician’s duties, no *159 matter how far they may be removed from educating students, are entitled to state-sanctioned immunity. That is the wrong approach, and it is simply illogical and contrary to statute to provide immunity for acts that are completely unrelated to the education of students. The net result is that the burden of paying for negligent acts will transfer from private insurance companies to the taxpayers of Ohio. It will also diminish the role of juries in the Ohio justice system, as jury trials are not available in the Ohio Court of Claims for claims against the state. R.C. 2743.11. Can we really say that is what the legislature intended? There is no good reason to extend immunity to physicians who are not actively training students in the practice of medicine.
{¶ 34} Prior to Theobald, Ohio courts were consistent in their holdings that a student had to be present in order for there to be immunity for the doctor. For example, in Hopper v. Univ. of Cincinnati, 10th Dist. Franklin No. 99AP-787, 2000 WL 1059672 (Aug. 3, 2000), the court held that since the physician was supervising residents while treating the patient, the conduct was within the scope of his employment as a state employee. See also Balson v. Ohio State Univ., 112 Ohio App.3d 33, 677 N.E.2d 1216 (10th Dist.1996) (doctors not entitled to immunity, because a separate practice plan was the employer and no students were present for the procedure); Katko v. Balcerzak, 41 Ohio App.3d 375, 536 N.E.2d 10 (10th Dist.1987) (doctor billing through his private medical partnership with no student present resulted in a finding of no immunity); Johnson v. Univ. of Cincinnati 10th Dist. Franklin No. 04AP-926, 2005-Ohio-2203, 2005 WL 1055906 (even though physicians were employed by the medical school as faculty and conducted a clinical practice supervising residents, no students were present for the procedure, so there was no immunity); Harrison v. Univ. of Cincinnati Hosp., 10th Dist. Franklin No. 96API01-81, 1996 WL 362055 (June 28, 1996) (doctor was a member of a practice plan as a faculty member, but since no student was present for the procedure, he was outside the scope of his state employment); Hans v. Ohio State Univ. Med. Ctr., Ct. of Cl. No. 2001-10140, 2005-Ohio-4457, 2005 WL 2065139 (Court of Claims determined that because the physician performed the procedure while being observed by a student, he was acting within the scope of his employment and therefore entitled to immunity); Kaiser v. Ohio State Univ., 10th Dist. Franklin No. 02AP-316, 2002-Ohio-6030, 2002 WL 31466409 (attending physician acted as a supervisor and, as such, was entitled to immunity, since he was acting within the scope of his employment).
{¶ 35} In Theobald, this court noted many of these cases and acknowledged that the focus of the analysis needed to be on the scope of employment with the state and on whether the physician was engaged in those duties at the time of the injury. Theobald, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, at ¶ 23-27. The bedrock principle that this court should uphold is that in the absence of a student, a procedure performed by a physician should not be protected by the *160 doctrine of immunity. State universities exist to educate. If education is not taking place, immunity does not apply. Clearly, while educating is a legitimate function of the state, competing with private hospitals is not. Providing universities and the doctors who operate in university hospitals with an economic edge is contrary to precedent and not a function of the judiciary.
{¶ 36} Based upon the opinion by the majority, state university teaching hospitals can now provide independent medical care separate and apart from their status as a teaching institution, and while doing so, their physicians will enjoy the benefits of immunity. All they should need from this point forward is the state university logo on the door and a contract calling everyone inside a faculty member. The student doctors, while still welcome to attend, are no longer necessary for immunity to attach.
{¶ 37} If the theory of the majority is truly the law of Ohio, the hospitals run by state universities and staffed by physicians who work for private for-profit corporations have a huge competitive advantage over private hospitals. They are able to limit their damage exposure due to lower caps in the Court of Claims, while also eliminating jury trials, yet operate in all other ways like the private hospitals that they compete with. Why is it necessary to give state hospitals this kind of economic advantage? Unless those physicians are actively involved in training new physicians or researching new procedures, there is no justification for providing them with such special treatment. While furthering a state hospital’s societal contribution by providing medical care combined with education is a worthy accomplishment, merely advancing the state hospital’s competitive economic advantage is not. Moreover, it is outside of the powers of the judiciary to make that kind of policy change.
{¶ 38} Additionally, under the majority’s holding, once immunity attaches, mere negligence is no longer the standard that physicians will be held to in performing their important procedures. These “state employee” doctors can now theoretically operate at a lower standard of care without fear of reprisal, provided that they do not go over the line in a wanton or reckless manner, or with malicious purpose. This decision sets a dangerous precedent. Stated more precisely, a state-university doctor will no longer be held to the same standard of care that is applied to his colleagues down the street in a competing facility not owned by the state. Simple negligence that arguably causes death, as is alleged herein, does not rise to the level of wanton misconduct. I understand and embrace immunity for the purpose of training our doctors of the future. That is a legitimate state activity. Creating an insurance-friendly environment in which for-profit corporations can find a safe haven is not.
{¶ 39} Accordingly, I respectfully dissent.
Pfeifer, J., concurs in the foregoing opinion.
*161 Colley, Shroyer & Abraham Co., L.P.A., and David I. Shroyer, for appellants.
Michael DeWine, Attorney General, Peter K. Glenn-Applegate, Deputy Solicitor, and Karl W. Schedler and Daniel R. Forsythe, Assistant Attorneys General, for appellee.
Giorgianni Law, L.L.C., and Paul Giorgianni, urging reversal for amicus curiae, Ohio Association for Justice.